**In re SANDMAR CORPORATION, a New Mexico corporation, Debtor.**

**The NAVAJO TRIBE, Plaintiff,**

v.

**SANDMAR CORPORATION, Defendant.**

Bankruptcy No. 81–00017J.
Adv. No. 81–426J.

United States Bankruptcy Court,
D. New Mexico.

Dec. 21, 1981.

Joseph K. Brinig, Phoenix, Ariz., and Lynn Tetterington, Albuquerque, N. M., for the Navajo Tribe.

Stephen Vogel, Albuquerque, N. M., for Sandmar Corp.

## MEMORANDUM OPINION

GLEN E. KELLER, Jr., Bankruptcy Judge.

This case came on for hearing on December 9, 1981, in Albuquerque, New Mexico, on the Navajo Tribe's motion for summary judgment on the complaint for relief from the automatic stay. Debtor holds a lease from the Tribe to run and operate the Window Rock Inn, the only establishment of its kind in the area, Window Rock being the capital of the Navajo nation. Plaintiff requests relief from the stay in order to be able to terminate the lease held by debtor so that the premises can be leased to another party.

The chronology of proceedings is important to understand the disposition of the motion.

1. On January 8, the debtor filed its Chapter 11 petition in this Court.

2. On January 19, 1981, the Navajo Tribe took possession of the Window Rock Motor Inn.

3. On February 9, debtor filed an order to show cause.

4. On July 31, 1981, this Court found the Tribe in contempt and ordered it to turn over the property to the debtor. 12 B.R. 910. Debtor has not accepted possession of the property, however, and the Tribe continues to operate the Inn.

5. On July 7, 1981, the Tribe filed the complaint to modify the stay which is the subject of this summary judgment motion.

6. On July 27, 1981, the parties by stipulation waived the preliminary hearing required within 30 days under § 362(e).

7. The complaint was set for hearing on September 8, 1981.

8. The hearing was reset for September 16, 1981, and on September 11 the hearing was indefinitely continued pursuant to notice from the Clerk's office.

Plaintiff argues three points in support of its motion: 1) that under 11 U.S.C. § 362(e) the automatic stay terminated by operation of law after 60 days elapsed without a hearing on the complaint; 2) that the Court should use its equitable jurisdiction to grant relief to the plaintiff, which is managing the property at a loss because the debtor refuses to take possession; and 3) that no genuine issue of material fact exists as to the amount of money owed by debtor to plaintiff (at least $150,000) and that the leased property has been and is operating at a deficit.

The controlling statute reads in pertinent part:

> (e) Thirty days after a request...for the relief from the stay of any act against property of the estate...such stay is terminated with respect to the party in interest making such request, unless the court, after a notice and a hearing, orders such stay continued in effect pending, or as a result of a final hearing and determination under subsection (d) of this section.

11 U.S.C. § 362(e).

■ The automatic stay is solely a creature of statute, and the words of the statute are clear and unambiguous. The statute has the effect of dissolving the automatic stay after a 30-day period (here extended by the parties to 60 days by waiver of the right to a preliminary hearing within 30 days) *unless* the Court, after notice and hearing orders that the stay continue. The original complaint was filed on July 7, 1981, and the summons and notice set the trial for September 8, 1981, within the 60-day period. Then, apparently through inadvertence in rescheduling matters because of the resignation of the Judge who had been hearing the case, the hearing was continued, first until September 16, 1981, and then indefinitely.

The automatic stay provisions work to benefit both the debtor and the creditor. The debtor is given a breathing space from insistent creditors, and the creditor is protected from having the estate dismantled piece meal, often to his detriment. Once this balance is struck by the filing of the petition, it can be shifted by the filing of a request for relief of the automatic stay. Ordinarily, and as anticipated by the drafters of the Code, the Court will act by hearing the complaint and making a determination on the merits of the complaint. If the Court does not act to hear the request, then the scale automatically tips in favor of the creditor, who may then proceed against the debtor. This automatic shifting of positions redresses some problems occurring under the former Bankruptcy Act which gave rise to charges by creditors of impairment of fundamental rights. 2 Collier on Bankruptcy, ¶ 362.01 at 362–22 (15th ed. 1979).

■ Because the Court must hear a request for modification of a stay within 30 days, have a final hearing within 60 days, and make a final determination within 90 days, Rule 4001, Interim Bankruptcy Rules, a great burden is placed on the Court to act promptly to prevent the stay from terminating. With the recent enormous proliferation of bankruptcy filings, this requirement can at times become burdensome. Nevertheless, this section of the statute imposes a duty on the Court to act within the time periods. *In re Feimster*, 3 B.R. 11, 6 B.C.D. 131 (Bkrtcy.N.D.Ga.1979). If the Court does not act, then the automatic stay dissolves of its own terms.

Because the statute is self-executing the automatic stay had to dissolve on September 9. No hearing had commenced, and no matter was under consideration by the Court concerning this proceeding.

■ In order to ensure the continued protection of the stay in this kind of situation, a debtor is not without a remedy. If no judge is available to act on the request for relief from the stay or if it appears the Court will not act in time to prevent the automatic termination of the stay, the debtor may make application to the district court or to the circuit court to obtain the appointment of a judge. Aggressive litigation management is required to pursue this avenue of relief, but it is available to protect a party from the effect of § 362(e).

■ In addition, the debtor can request another remedy from the Court, because the automatic stay is not the exclusive remedy available. Case law is replete with suggestion that even after 60 days, the Court has other authority to enjoin action against the debtor's property. *In re Saez*, 13 B.R. 605 (Bkrtcy.D.Puerto Rico 1981); *In re Fulghum Construction Corp.*, 5 B.R. 53 (Bkrtcy.M.D.Tenn.1980). Particularly where, as here, the stay is terminated because of inadvertence, the Court has the power and duty to act where the facts and justice demand. *In re Feimster*, 3 B.R. 11,

6 B.C.D. 131 (Bkrtcy.N.D.Ga.1979). The Court also has authority under Rule 65 F.R. C.P. and 11 U.S.C. § 105(a) to issue new stays. *In re Walker*, 3 B.R. 213, 6 B.C.D. 161 (Bkrtcy.W.D.Va.1980).

■ Because of the chronology of events here, the summary judgment motion must be granted. No issue of material fact exists which affects the date of filing, passage of time, or lack of judicial action. The stay is deemed to have been modified in that it terminated by operation of law on September 9, 1981, and no other remedial action was requested of this or any other court.