In re **MARINE POWER & EQUIPMENT COMPANY, INC., et al., Debtors.**

**UNITED STATES of America, Appellant,**

v.

**MARINE POWER & EQUIPMENT COMPANY, et al., Appellees.**

No. C86–1588M.

United States District Court, W.D. Washington.

March 30, 1987.

Richard Willard, Asst. Atty. Gen., Gene Anderson, U.S. Atty., J. Christopher Kohn, Tracy J. Whitaker and Timothy F. Brown, Attys., Civil Div., Dept. of Justice, Washington, D.C., for appellant.

Arthur H. McKean and Wallace Aiken, Aiken, St. Louis & Siljeg, Seattle, Wash., for debtors/appellees.

## MEMORANDUM OPINION REVERSING BANKRUPTCY COURT AND REMANDING

McGOVERN, Chief Judge.

### INTRODUCTION AND SUMMARY CONCLUSION

This matter is before the Court on appeal from an August 14, 1986 order of the Bankruptcy Court indefinitely extending the automatic stay. This order is a final, appealable order. *See, In re American Mariner Industries, Inc.*, 734 F.2d 426, 429 (9th Cir.1984); 28 U.S.C. § 1292(a)(1); 1 Norton Bankr.L. & Prac. (Callaghan) § 17.-11 at 24 (July 1986).

The parties agree on the basis of appellate jurisdiction, the issues presented, the applicable standard of judicial review, and the statement of the case made by the appellant United States of America.

As presented in the Government's memorandum, this appeal presents the following legal issues that the Court will determine as a matter of law:

(1) Did the Bankruptcy Court properly extend the automatic stay imposed by 11 U.S.C. § 362 without a hearing or factual findings of any kind?; (2) If the Bankruptcy Court improperly extended the stay, is the United States entitled to foreclose upon its security even though subsequent orders extending the stay might otherwise be proper?

The agreed upon statement of the case is as follows:

The debtors filed for reorganization under chapter 11 of the Bankruptcy Code on February 14, 1986. On July 10, 1986, the United States filed a Motion for Relief from Stay on behalf of its agency, the Maritime Administration ("MARAD"). The United States sought relief from the stay in order to foreclose upon 28 tugs and barges in which the United States held security interests for approximately $89 million in debt owed to MARAD on the date the debtors filed for bankruptcy.

By letter from the law clerk for The Honorable Sidney C. Volinn, dated July 16, 1986, counsel for the parties were informed that a prehearing conference had been scheduled for August 6, 1986. On August 1, 1986, the United States filed a Motion for Clarification Whether It May Present Testimony at the Prehearing Conference on August 6, 1986. The motion expressly stated that the United States did not intend to waive its right to a preliminary hearing pursuant to 11 U.S.C. § 362.

A "prehearing conference" was held on August 6, 1986, as scheduled. Transcript of Proceedings re Hearing on Trial Dates, dated August 6, 1986. The day of the hearing, the United States filed an Affidavit of Michael P. Ferris In Support of Motion for Relief From Stay, and an Affidavit of Thomas O. Mowbray In Support of Motion for Relief From Stay.

The affidavits were presented to the Court at the prehearing conference. Tr. at 4–6. Mr. Mowbray, an expert appraiser of tugs and barges, valued the collateral at $53.6 million. Mr. Ferris, Chief of the Financial Studies Group at MARAD, calculated that MARAD required monthly payments of $401,765 to compensate MARAD for lost return on the proceeds of foreclosure due to the stay, and $275,350 for depreciation in the value of the collateral due to its declining useful life.

Counsel for the debtors declined to present evidence on the grounds that no preliminary hearing had been scheduled. The United States then requested the Court to hold a preliminary hearing within the time period provided by § 362. Tr. at 8–11. Counsel for the debtors responded that his expert was unavailable within that time period. Tr. at 12. The Court then stated its intention to enter an order to keep the stay in effect until a final hearing was concluded. Tr. at 16–18.

On August 14, 1986, the Court entered an Order Continuing Advisory Committee and Directing Debtor to Prepare and File Business Plan, which provided:

> IT IS FURTHER ORDERED that the automatic stay under § 362 of the Bankruptcy Code shall be and hereby is continued against Industrial Indemnity Company and the Maritime Administration until further order of this Court, provided that any party aggrieved by this order may request a hearing before this Court on ten days notice to the debtor corporation.

The following analysis will demonstrate that the Bankruptcy Court failed to have a proper hearing within 30 days of the Government's Motion for Relief from Stay; as a consequence, the stay was lifted by operation of law at the end of the 30–day period. The Government could then have foreclosed upon all the secured vessels, and such is its relief now.

## ANALYSIS

### Mootness

■ The debtor raises a mootness issue. The Government argues that the matter is not moot because continued operation of the stay is depriving it of its right to foreclose against the vessels. The debtor states that there has been a final hearing, and the Bankruptcy Judge rendered his oral decision on October 17, 1986. The debtors agreed they would not resist MARAD's petition for relief from the automatic stay with respect to certain vessels referred to as the "released vessels," but argued that the automatic stay should continue with respect to the remaining vessels, referred to as the "retained vessels." Judge Volinn ordered the relief requested by the debtor and ordered adequate protection payments as required by *In re American Mariner Industries*, 734 F.2d 426 (9th Cir.1984). The debtor's argument is without merit.

While there has been a final hearing and compromise relief has been afforded the creditor, regardless of the issue of appropriateness of the relief granted, the correctness of the procedures employed en route to resolving the question of adequate protection is now in issue and would escape review if a final hearing were declared to render the procedural issue moot.

### Relief from Stay

The provisions of 11 U.S.C. § 362 concerning the automatic stay are clear. Section 362(a) provides that a petition filed in bankruptcy operates as a stay of various proceedings against the debtor, including acts to obtain possession of property of the estate.

Section 362(d) provides a procedure for obtaining relief from the stay:

> On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) For cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) With respect to a stay of an act against the property under subsection (a) of this section, if—

(A) The debtor does not have an equity in such property; and

(B) Such property is not necessary to an effective reorganization.

A further provision, 11 U.S.C. § 362(e), provides for automatic termination of the stay in 30 days

unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be commenced not later than thirty days after the conclusion of such preliminary hearing.

In summary, 11 U.S.C. § 362(e) provides for automatic termination of the stay within 30 days of a motion for relief from stay, unless the court rules after notice and hearing within that time that the shortcomings enumerated in subsection (d)(1) and (2) are not present.

■ The "prehearing conference" held on August 6, 1986, was not a preliminary hearing within the contemplation of Section 362. The Bankruptcy Judge did not weigh evidence from both sides nor make a finding that the debtor was likely to prevail on the adequate protection issue. At the "prehearing conference," held August 6, 1986, counsel for the United States summarized its affidavits concerning adequate protection both in terms of the debt security as well as protection against deterioration in the value of the collateral and risk of nonpayment, or depreciation. The Government stated it was inconceivable that the debtor could make the payments required for adequate protection. Counsel for the debtor was not prepared to present coun-ter-arguments to the Government's assertion of what was adequate protection and resisted the setting of a hearing within the 30–day period, arguing instead for a final hearing outside that timeframe owing to the complexity of the litigation involving numerous pieces of collateral and millions of dollars. (Tr. at 14–15.) The Bankruptcy Judge then concluded that he would continue the stay in effect until after a final hearing to be set in September. (Tr. 16 and 18.) The Government argued the propriety of the continuation of the stay, but the Court stated:

I'm all too familiar with the tight timeframes that are set forth in Section 362 D or E. I feel implicit in those tight timeframes, if given an appropriate circumstance—I believe that such a circumstance exists here—that a court has to have some leeway to conduct litigation of a very complex nature.

(TR. at 17.) Noting the amount of money involved, property valued at $56 million with the underlying obligations $90 million (TR. at 18.), the Court concluded that live testimony and cross-examination of witnesses was appropriate and stated:

You just started your lawsuit on July 10th, so I think if you have your trial on September 10th, I think that's pretty fast.

(*Id.*) Under such circumstances, where the Bankruptcy Court did not hear from both sides, it is difficult to say that the Court properly could have concluded that there was, in the words of the statute, a "reasonable likelihood that the party opposing relief from such stay will prevail" (11 U.S.C. § 362(e)) at the conclusion of a final hearing, and of course, he did not so conclude.

One who seeks relief from the automatic stay must establish a legally sufficient basis for such relief; the burden is then upon the debtor to demonstrate that it is entitled to the stay. 11 U.S.C. § 362(g); *In re Gauvin*, 24 B.R. 578, 580 (9th Cir.Bankr. App.1982); *In re Curtis*, 40 B.R. 795, 802–03 (Bankr.D.Utah 1984). In the present case, although the creditor came forward with evidence at the conference, the debtor presented nothing. The 30–day period be-

gan to run the day after July 10, 1986 (Fed.R.Civ.P. 6(a)) when the United States filed a motion for relief from stay on behalf of MARAD. 11 U.S.C. § 362(e). The 30–day period ended August 9, 1986 (August 11, 1986 pursuant to Fed.R.Civ.P. 6(a)), and the stay automatically terminated under the operation of the statute. The order of the Bankruptcy Court at the August 6, 1986 conference was unauthorized because there was no proper hearing. On August 14, 1986, there was no stay in force to be continued.

*Equitable Extension of Statutory Time Period Improper*

■ While the Bankruptcy Court may have been taking what it viewed to be a practical approach under the circumstances, the statutory provision mandating that a hearing shall occur within 30 days may not be judicially modified, even for an apparent good reason. Even if timeframes provided in a statute are difficult in practice, it is not for the bankruptcy court to ignore the provisions and use its equitable powers to modify clearly stated procedures. At least two bankruptcy courts and the Ninth Circuit share this view.

In *In re Wood,* 33 B.R. 320 (Bankr.D.Idaho 1983), the bankruptcy stay was lifted by operation of law 30 days after a motion for relief was filed. Claiming inadvertence of counsel in failing to request a preliminary hearing, the debtors asked for reinstatement of the stay stating they could provide adequate protection payments and deserved an opportunity to effect a successful reorganization. The court observed that it could not exercise its equitable powers to nullify the effect of the statute. The court reasoned as follows:

I find no authorization, statutory or otherwise, for "reinstitution" of the § 362(a) stay which arises upon the filing of a petition for relief under the Code. That stay is automatic, and not dependent upon "order" of the Court. It arises by operation of statutory law and, if § 362(e) applies, is terminated by operation of law. It is, in my opinion, beyond the power of this Court to recall or recre-

ate. Thus, there is no stay "order" which may be "reinstated."

*Id.* at 321–22. The Court went on to observe the purpose of the statutory provision:

Section 362(e) is a specific provision enacted by Congress for the purpose of providing a special protection and a speedy remedy to secured creditors. It was the result of perceived abuses under the 1898 Act. The section's operation is clear and unambiguous, and compliance therewith achieves the dual purposes of debtor protection and creditor relief.

*Id.* at 322.

Next the Court recognized that other bankruptcy courts have felt otherwise:

Defendants by their motion seek a judicial modification of the requirements and operation of this statute. I am aware that some courts have held that, in situations analogous to that presented here where the debtor in possession failed to avail itself of its right to demand a hearing for the purpose of obtaining an order continuing the stay in effect, the court can nevertheless grant the debtor a second chance. I must respectfully disagree with the rationale of those decisions.

The issue is whether a Bankruptcy Court can, in the exercise of its equitable powers, nullify the express provisions and the clear import of § 362(d) and (e) upon the sole ground that the debtor through oversight or neglect failed to obtain an order continuing the stay in effect. I conclude that it cannot. To do so is to judicially legislate and avoid clear and expressly stated congressional intent. In addition, the effect of such decisions is to create uncertainty in the operation of § 362(e) and invite further litigation.

*Id.* Finally, the Court addresses the argument that a Court's extension of the automatic stay is authorized by 11 U.S.C. § 105:

Thus, it is my ultimate conclusion that this Court cannot vary the operation of the Code through recourse to § 105(a). As I stated in *Cramer v. Markee,* 31

B.R. 429 at 431, 83 IBCR 74, at 76 (Bkrtcy.D.Idaho 1983):

> "I cannot utilize the general grant of the powers of a court of equity to authorize the debtor in possession to do something which Congress has expressly considered and limited. Indeed, § 105(a) provides 'the bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title'" [Emphasis in original.]

In extraordinary circumstances the equitable powers of this Court may be utilized to prevent injury or correct errors, but nullification of the stay termination resulting from the operation of § 362(e) is not one of them.

*Id.* at 322–23.

A bankruptcy court in the Eastern District of Pennsylvania has cited with approval, the language in *In re Wood,* declining to circumvent the statutory language of Section 362(e). *In re Willbet, Enterprises, Inc.,* 43 B.R. 90, 92–93 (Bankr.E.D.Penn. 1984). Moreover, the Ninth Circuit has reached the same conclusion. In a matter before Judges Hug, Norris and Duniway, on the issue of whether a court can use its general equitable powers to authorize something which Congress has explicitly considered and limited, the Court cited with approval *Willbet* and *Wood* in concluding that a court may not so use its equitable powers. *In re Dominelli,* 788 F.2d 584, 586 (9th Cir.1986).

*Relief for Improper Continuation of Stay*

■ The question then becomes what relief is due the Government for the improper continuation of the automatic stay by the Bankruptcy Court. By operation of law, when no proper hearing was held on the motion to lift the stay, the August 6 order continuing the stay was without effect and the stay was automatically lifted pursuant to 11 U.S.C. § 362(e). The Government then would have been able to foreclose upon all the vessels, because that was what it legally was able to do once the stay lifted on August 10, 1986 despite the Bankruptcy Court's order. The subsequent order continuing the "stay" was meaningless as there was no such stay in effect to be continued. By operation of law, the United States, representing MARAD, must be allowed to forclose against all the vessels in which it held a security interest.

To suspend the effect of the automatic lifting of the stay, leaving intact the Orders following the final hearing and preventing foreclosure by the Government, would subject this court to the criticism that it is guilty of the same improper, equitable-powers maneuvering of which the Bankruptcy Court is guilty. Such suspension of the statute's effect is inappropriate because the statutory language is plain and unambiguous. Thus, this is not an occasion for announcing a heretofore unclear rule and giving it prospective effect only.

Although this may be a harsh lesson for the debtor, the debtor failed to assist the Bankruptcy Court and failed to cooperate in setting a preliminary hearing date within the 30–day limit and thus gained the advantage of delay. A debtor, as an officer of the Court, must insist that proper procedures are followed for its own protection as well as in the interest of fair play.

Moreover, the improper order continuing the stay caused the United States, on behalf of MARAD, to incur costs in the delay in enforcing its rights against the vessels. Some compensation in the form of recoupment of these costs is in order. In *In re American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984), the Court held that an undersecured creditor, stayed by bankruptcy petition from repossessing its collateral, was entitled, under the concept of "adequate protection," to compensation for delay in enforcing its rights against the collateral. In its conclusions, the Court stated:

> The secured creditor's right to take possession of and sell collateral on the debtor's default has substantial, measurable value. The secured creditor bargains for this right when it agrees to extend credit to the debtor and both parties consider the right part of the creditor's bargain. The right constitutes an "interest in property" that is "created and defined by state law," and we are

aware of no federal interest that requires this right of the secured creditor to go unprotected "simply because an interested party is involved in a bankruptcy proceeding."

*Id.* at 435 (citations omitted).

The Court went on to describe the practical effect of delays in enforcing rights against collateral:

> The Court in *Butner* [*v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136] observed that "[u]niform treatment of property interests by both state and federal courts within a State serves ... to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" 440 U.S. at 55, 99 S.Ct. at 918 (quoting *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961)). To the extent that the debtor in bankruptcy can prevent the secured creditor from enforcing its rights against collateral while the debtor benefits from the creditor's money, the debtor and his unsecured creditors receive a windfall at the expense of the secured creditor.
>
> We conclude that sections 361 and 362(d) were drafted to preclude such a windfall and to insure that the secured creditor receives the benefit of its bargain. We are satisfied that our holding in this case will not inhibit successful reorganization but rather will promote among other things the ready availability of affordable credit.

*Id.*

Finally, the Court addressed the manner in which compensation could be made:

> We hold that Crocker National Bank is entitled to compensation for the delay in enforcing its rights during the interim between the petition and confirmation of the plan. Crocker contended that such compensation should take the form of monthly interest payments at the market rate on the liquidation value of the collateral. We agree that this is one method of providing adequate protection but by no means the only method available to the debtor. Consistent with the policies behind sections 361 and 362, the debtor should be permitted maximum flexibility in structuring a proposal for adequate protection. The result, however, should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights.

*Id.* The Ninth Circuit then remanded the matter to the Bankruptcy Court for further findings consistent with the appellate opinion. Remand is necessary in this case because the Government was prevented from foreclosing against the vessels when the stay automatically lifted, and it is entitled to compensation for the delay. *American Mariner,* 734 F.2d at 435. There are two periods of delay: (1) from August 10, 1986, the date the stay automatically lifted to when the United States foreclosed upon the "released" vessels, and (2) from August 10, 1986 to the entry of this Order on Appeal as to the "retained" vessels. On remand, the bankruptcy court shall determine with the parties the appropriate compensation for these periods of delay and shall conduct any further proceedings necessary under and consistent with this order.

## CONCLUSION

The issues are not moot, as they are capable of evading review. The Bankruptcy Court improperly extended the automatic stay imposed by 11 U.S.C. § 362 without a hearing and findings required by 11 U.S.C. § 362(d) and (e). The United States is entitled to foreclose upon its security— all the vessels—because absent such hearing and findings within 30 days, the stay terminated by operation of law. The matter is remanded for determination of the appropriate compensation to the United States for the delay in its being able to foreclose on the vessels.

**REVERSED AND REMANDED.**